UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DAVID VEREEN,<br><br>Defendant. | CRIMINAL ACTION NO.<br>1:25-CR-00426-JPB |

# ORDER ADOPTING FINAL REPORT AND RECOMMENDATION

This matter comes before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R") [Doc. 40] regarding Defendant's Motion to Suppress Evidence [Doc. 23] and Defendant's Motion to Suppress Statements [Doc. 24]. This Court finds as follows:

## BACKGROUND

The R&R sets forth the relevant facts of this case in detail. See [Doc. 40, pp. 4–6]. This Court incorporates those facts by reference here and adopts all facts to which no party objects. In short, Defendant has been charged with transporting at least one visual depiction of a minor engaged in sexually explicit conduct and one count of possessing the same—including at least one depiction involving a prepubescent minor or a minor under the age of twelve. [Doc. 1]. Defendant filed the instant Motions to Suppress on April 24 and April 27, 2026, [Doc. 23]; [Doc.

24], arguing that the Court should exclude evidence obtained from his electronic devices as well as statements Defendant made to law enforcement. After extensive briefing and an evidentiary hearing on June 23, 2026, United States Magistrate Judge John K. Larkins, III issued the R&R on September 1, 2026. [Doc. 40]. He recommends both motions be denied. On September 9, 2026, Defendant filed objections to the R&R. [Doc. 42]. The R&R is now ripe for review.

## ANALYSIS

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of a Report and Recommendation that is the subject of a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard. See also Fed. R. Crim. P. 59(b)(3).

Notably, a party objecting to a recommendation "must specifically identify those findings objected to. Frivolous, conclusive[] or general objections need not be considered by a district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988) (citing Nettles v. Wainwright, 677 F.2d 404, 410 n.8 (5th Cir. Unit B 1982)). "It is critical that the objection be sufficiently specific and not a general objection to the report." Macort v. Prem, Inc., 208 Fed. Appx. 781, 784 (11th Cir.

2006) (citing Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984)). It is reasonable to place this burden on the objecting party because "[t]his rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009).

The R&R recommends denial of Defendant's Motion to Suppress Evidence on two alternative grounds.[1] First, the Magistrate Judge found that the forensic search of Defendant's device was a continuation of the search initiated at the airport and thus also fell within the exception for searches at the "functional equivalent of the border." [Doc. 40, pp. 11–12]; see United States v. Pulido, 133 F.4th 1256, 1273 (11th Cir. 2025) ("[B]order searches have been considered to be reasonable by the single fact that the person or item in question has entered into our country from outside." (citation modified)); United States v. Garcia, 672 F.2d 1349, 1363–64 (11th Cir. 1982) (recognizing that searches at the functional equivalent of the border "may also be justified as a border search requiring no warrant nor any suspicion"). Second, the Magistrate Judge said that—even assuming the forensic examination was a separate search—it also independently

[1] The R&R also recommends denial of the Motion to Suppress Statements [Doc. 24]. Defendant does not raise any objections as to the denial of that motion.

satisfied the criteria to be considered a search performed at the functional equivalent of the border. [Doc. 40, pp. 12–15]. Defendant raises an objection to each conclusion. The Court considers the objections in turn.

**A. Continuation of Border Search**

There is no dispute that the initial search of Defendant's devices at the airport occurred at the functional equivalent of the border and, thus, the search could occur without any level of suspicion. United States v. Touset, 890 F.3d 1227, 1233 (11th Cir. 2018) ("The Supreme Court has never required reasonable suspicion for a search of property at the border, . . . and neither have we."). After an initial search, specially trained officers conducted a forensic examination of Defendant's devices. That examination began about a week after the devices were initially seized. According to the R&R, the later forensic examination was simply a continuation of this initial airport search. [Doc. 40, pp. 11–12]. Defendant objects to that conclusion—arguing that the forensic examination was a separate search for Fourth Amendment purposes. [Doc. 42, pp. 2–3].

The R&R relied on United States v. Brown, No. 1:20-CR-00113, 2021 WL 3828797 (N.D. Ga. Aug. 27, 2021) in reaching its conclusion. [Doc. 40, p. 11]. In Brown, the court found that a forensic examination of electronic devices that occurred two weeks after their seizure was still part of the same search that was

initiated at the border. 2021 WL 3828797, at *3. Defendant argues this case should be disregarded because the facts there indicated that officers had reasonable suspicion to search the devices in question. [Doc. 42, p. 2]. He says that "this search was authorized as an 'extended border search' regardless of the basis for which it was upheld" by the Brown Court. Id. This Court is not persuaded. Brown's holding is that the single, "continued search" fell within the border exception even though it was "physically and temporally removed from the border." Brown, 2021 WL 3828797, at *3. However, even if the search could have been upheld because there was reasonable suspicion, that was not the court's holding. See Scott v. City of Daytona Beach, 186 F.4th 1286, 1305 n.14 (11th Cir. 2026) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (citation modified)). In short, Brown does not lose its persuasive force on the issue it did address just because the case could hypothetically have been resolved on other grounds.

Aside from this argument, Defendant generally says that courts conclude a border search has "continued" when the forensic examination takes place within a day or two of the initial border search. [Doc. 42, pp. 2–3]. While cases relied on in the R&R have such a timeline, this is not a bright-line rule. Brown, of course,

illustrates this. A two-week period is not necessarily so remote to no longer be a continuation of the border search.

The Court is cognizant of the fact that, at some point, a long enough delay in conducting a forensic examination could mean that the rationale of the border exception no longer applies. Still, as the R&R concluded, here the government "worked diligently to make the request for the examination, obtain approval, and deliver it to" specially trained agents for analysis. [Doc. 40, p. 14]. Moreover, the rationale behind the border exception remains intact where a search is conducted before property is cleared for entry into the country and before a defendant "could regain an expectation of privacy in that property." United States v. Stewart, 729 F.3d 517, 526 (6th Cir. 2013); accord United States v. Kolsuz, 185 F. Supp. 3d 843, 851–52 (E.D. Va. May 5, 2016), aff'd 890 F.3d 133 (4th Cir. 2018). The extended border search doctrine's reasonable suspicion requirement, on the other hand, will "typically apply . . . in situations where customs agents returned custody of an item, or where customs agents never took custody of the item at the border, but conducted a subsequent search of that item after the custodian and the items had cleared customs." Stewart, 729 F.3d at 526. Such circumstances are not presented here. Rather, a forensic examination occurred in a relatively short time

period and before the devices were cleared for entry into the United States. In such circumstances, only a single border search occurs.

**B. Functional Equivalent of the Border**

Even if there were a separate search, the R&R concluded that the second search would still have occurred at the functional equivalent of the border. Three factors determine whether a search has occurred at the functional equivalent of the border: (1) reasonable certainty that the border was crossed, (2) lack of time or opportunity for the object to have changed materially since the time of crossing, and (3) performance of the search at the earliest practical point after the border is crossed. United States v. Santiago, 837 F.2d 1545, 1548 (11th Cir. 1988) (citing Garcia, 672 F.2d at 1363–64). If any of these factors is not satisfied, then the search was not at the functional equivalent of the border.

Defendant does not object to the Magistrate Judge's conclusion that the first and second factors are satisfied. He argues, however, that the forensic examination was not conducted at the earliest practical point after the border is crossed. [Doc. 42, pp. 3–5]. Here Defendant makes a similar argument, that many of the cases discussing these kinds of searches refer to forensic examinations being conducted the same day or within a day or two. Id. at 3–4. He specifically contends that "there was no reason why these devices could not have been immediately taken to

the field office to be searched as was done in the cases cited" and that the agent in this case testified that "it was certainly possible that a forensic examiner could have accompanied him to the airport that day to conduct the search." Id. at 5.

Again, however, these cases do not establish a bright-line rule as to what is practicable. And Defendant does not challenge the R&R's factual findings related to practicability. These findings include the fact that specially trained agents conduct forensic examinations, that they only work between Monday and Friday, that agents had to obtain agency approval before conducting the examination and that a large burden would be placed on the government if all such searches had to be conducted at the airport itself. [Doc. 40, pp. 12–14]. Given all these facts, the Court agrees that search here was done as soon as it could possibly be completed at the HSI field office. Conducting the search as soon as practicable is all that the functional equivalent test requires. As the Magistrate Judge correctly observed, the fact that it might have been *possible* to perform the search earlier does not mean that it was practicable to do so. Id. at 13.

## CONCLUSION

For the foregoing reasons, Defendant's objections are **OVERRULED**. The Court hereby **APPROVES AND ADOPTS** the R&R as the judgment of the Court.

For the reasons stated in the R&R and herein, the Motions to Suppress [Doc. 23]; [Doc. 24] are **DENIED**.

**SO ORDERED** this 16th day of October, 2026.

**J. P. BOULEE**
United States District Judge